**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **Linda Martinez**<br>4330 Orangeberry Drive<br>Grove City, OH 43123<br><br>*Plaintiff,*<br>v.<br><br>**Department of Homeland Security**<br>245 Murray Lane, SW<br>Washington, DC 20528<br><br>and<br><br>**U.S. Customs and Border Protection**<br>1300 Pennsylvania Ave.<br>Washington, DC 20229<br><br>and<br><br>**Transportation Security Administration**<br>6595 Springfield Center Dr.<br>Springfield, VA 22150<br><br>**As to each Defendant Serve:**<br>United States Attorney for the<br>District of Columbia<br>555 4th Street NW<br>Washington, DC 20530<br><br>Attorney General of the United States<br>U.S. Department of Justice<br>950 Pennsylvania Avenue<br>Washington, DC 20530<br><br>Defendants. | **COMPLAINT**<br>**Civil Action No:** |

**COMPLAINT FOR DEMAND FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff Linda Martinez ("Plaintiff"), by and through undersigned counsel, brings this civil action and states as follows:

1. The Plaintiff seeks declaratory relief, injunctive relief, and other appropriate relief and seeks the disclosure and release of agency records improperly withheld by Defendants, the Department of Homeland Security ("DHS"), and its subordinate agencies, pursuant to the Privacy Act of 1974, 5 U.S.C. § 552a et seq. ("PA") and the Freedom of Information Act, 5 U.S.C. § 552(a) et seq. ("FOIA").

## JURISDICTION AND VENUE

2. This Court has both subject-matter jurisdiction over this action and personal jurisdiction over the Defendants pursuant to 5 U.S.C. § 552(a)(4)(B), 5 U.S.C. § 552(a)(6)(C)(i), 5 U.S.C. § 552a(g)(1), and 28 U.S.C. § 1331.

3. Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B), 5 U.S.C. § 552a(g)(5) and 28 U.S.C. § 1391(b) and (e).

4. The Court has the authority to issue declaratory and injunctive relief under 28 U.S.C. § 1361, 5 U.S.C. § 552(a)(4)(B), and 5 U.S.C. § 552a(g)(2)(A).

5. The Court has the authority to award actual damages under 5 U.S.C. § 552a(g)(4)(A).

6. The Court has the authority to award attorneys' fees and litigation costs under 28 U.S.C. § 2412 and 5 U.S.C. § 552a(g)(3)(B) and 5 U.S.C. § 552(a)(4)(E)(i).

## PARTIES

7. Plaintiff is a native-born United States citizen and a resident of Ohio. Plaintiff is the subject of records maintained by Defendants.

8. The Defendant, DHS, headquartered at Washington, D.C., and their federal agencies fall under the definition of "federal government agency" within the meaning of (1) 28 U.S.C. § 1346(b), 28 U.S.C. § 2401(b), and 28 U.S.C. § 2671, and (2) 5 U.S.C. § 552(f)(1) and 5

U.S.C. § 552a(a)(1). The U.S. Customs and Border Protection ("CBP") is a component of DHS, headquartered at Washington, D.C. The Transportation Security Administration ("TSA"), is also a component of DHS, headquartered at Springfield, VA. The DHS is in possession, custody, and control over documents records about Plaintiff.

## LEGAL FRAMEWORK

### The Freedom of Information Act

9. The FOIA statute, 5 U.S.C. § 552, requires federal agencies to release records to the public upon request, except those protected from disclosure by one or more statutory exemptions.

10. The FOIA statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, *shall* make the records promptly available to any person." 5 U.S.C. § 552(a)(3) (emphasis added). Thus, FOIA creates a presumption that records held by the federal government must be produced to members of the public upon request.

11. An agency must respond to a FOIA request within twenty (20) working days after receipt of the request, notifying the requester of the agency's determination whether to comply with such request – providing the scope of documents it will produce, exemptions it will claim (if any), and reasons for its determination – and informing the requester of their right to appeal an adverse determination to the head of the agency. 5 U.S.C. § 552(a)(6)(A)(i).

12. In "unusual circumstances," an agency may extend its time to respond to a FOIA request or appeal by up to ten working days. 5 U.S.C. § 552(a)(6)(B).

13. A FOIA requester is "deemed to have exhausted [its] administrative remedies with respect to [the FOIA] request if the agency fails to comply with the applicable time limit provisions" under FOIA. 5 U.S.C. § 552(a)(6)(C)(i). The requester may then file suit in federal court to obtain the requested records.

14. Pursuant to the FOIA, the "court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed. 5 U.S.C. § 552(a)(4)(E)(i). A "complainant has substantially prevailed if the complainant has obtained relief through either—(I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii).

**The Privacy Act**

15. The Privacy Act provides that "[e]ach agency that maintains a system of records shall . . . upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him… to review the record and have a copy made of all or any portion thereof in a form comprehensible to him[.]" 5 U.S.C. § 552a(d)(1). The Privacy Act accordingly creates a presumption that records held by the federal government that pertain to a specific individual must be made available to that individual upon request.

16. When an agency "refuses to comply with an individual request under subsection (d)(1) . . . the court may enjoin the agency from withholding the records and order the production to the complainant of any agency records improperly withheld from him." 5 U.S.C. § 552a(g)(1)(B); 5 U.S.C. § 552a(g)(3)(A).

17. Further, the "court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this paragraph in which the complainant has substantially prevailed." 5 U.S.C. § 552a(g)(3)(B).

18. When an agency fails to comply with any provision of the Privacy Act, or any rule promulgated thereunder, not articulated within 5 U.S.C. § 552a(g)(1)(A)-(C), in such a way as to have an adverse effect on an individual, the individual may bring civil action against the agency. 5 U.S.C. § 552a(g)(1)(D). If the

> "court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of - (A) actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; and (B) the costs of the action together with reasonable attorney fees as determined by the court."

5 U.S.C. § 552a(g)(4).

## FACTS

### Background of Issue

19. Defendants maintain a system of records that includes information about Plaintiff, as Plaintiff is an extensive traveler who had the benefit of TSA PreCheck and Global Entry.

20. Plaintiff is a longtime corporate executive who has worked for JPMorgan Chase for approximately 19 years, currently serving in a senior leadership role that oversees a global team. Before the events described below, she traveled internationally and domestically frequently for both business and personal travel, including extensive prior international travel without recurring CBP/TSA screening issues.

21. In April of 2025, CBP revoked Plaintiff's Global Entry membership without explanation and she immediately requested reconsideration to the CBP Ombudsman.

22. Plaintiff has since experienced extremely burdensome travel disruptions by CBP and TSA.

23. Plaintiff filed a FOIA request with CBP seeking records and information related to the Global Entry and secondary screening issues on April 25, 2025. On May 8, 2025, CBP closed the request and requested an identity statement. She filed a new FOIA request with CBP on May 8, 2025.

24. On or about October 20, 2025, Plaintiff received a FOIA response from CBP, which was heavily redacted with some pages withheld or deleted. The Ombudsman reconsideration request was also denied.

25. On November 8, 2025, Plaintiff's husband, Chris Martinez, who also holds Global Entry, was referred to CBP secondary inspection at Dallas/Fort Worth International Airport (DFW) upon returning from Oaxaca, Mexico. Plaintiff was not traveling on that itinerary.

26. During Chris Martinez's secondary inspection, CBP officers focused almost entirely on his phone and device, requesting that he repeatedly unlock it throughout a detention lasting approximately three hours. Officers questioned him about gangs, terrorism, drugs, family members in Mexico, Plaintiff's name and employment, and their kids' names. He missed his connecting flight home as a direct result and was required to obtain overnight lodging before traveling home the following morning.

27. On or about February 28, 2026, Plaintiff was returning to the United States from a work trip to India. While connecting through Dubai, she became stranded due to regional conflict and airspace disruptions. Plaintiff initially boarded a flight from Dubai to Chicago O'Hare International Airport (ORD) as the conflict escalated, but remained onboard the aircraft for approximately six hours before the flight was ultimately canceled.

28. Over the following several days, Plaintiff made repeated attempts to secure alternate routing out of Dubai as flights continued to be canceled or rerouted. She booked multiple alternate tickets while attempting to safely return to the United States. She contacted the U.S. Embassy for assistance and was offered none.

29. Plaintiff ultimately secured travel from Dubai to Cape Town, South Africa, departing on March 4, 2026, and returned to the United States via Cape Town (CPT) to Newark Liberty International Airport (EWR) to Columbus, Ohio (CMH).

30. On March 6, 2026, upon arriving at EWR, Plaintiff was referred to additional CBP screening and told that CBP needed to "validate" her passport. Officers questioned Plaintiff extensively regarding her current and prior employment, her title, her husband's employment and citizenship, her work and personal phone numbers and email addresses, her travel routing and the multiple tickets booked during the Dubai disruption, family members, her oldest daughter and daughter's fiancé, prior residences, and whether there were any connections to gangs, terrorism, or drugs. Officers searched all luggage and bags, and documented Plaintiff's phone type, serial number, and IMEI information. Plaintiff was cleared after approximately one hour.

31. Approximately one and a half hours later, while Plaintiff was preparing to board a domestic connecting flight, her boarding pass was suddenly invalidated and disappeared from her phone. Plaintiff observed CBP officers standing near the gate with her checked luggage. Officers stated they had "forgot to ask a few questions upstairs" and subjected Plaintiff to additional questioning regarding the university she attended, an address on Medora Drive, prior addresses, whether she had ever been arrested, and the details of her marriage. Officers stated they needed to "call upstairs for clearance." Plaintiff was ultimately permitted to board but was minutes away from missing the flight.

32. When Plaintiff asked a CBP officer whether these encounters would continue to occur, the officer stated he did not know but suggested Plaintiff review information on a FOIA/TRIP card provided to her.

33. On March 8, 2026, Plaintiff filed a DHS Traveler Redress Inquiry Program (TRIP) redress request following the CBP encounter and boarding pass invalidation at EWR Airport. Plaintiff was assigned DHS TRIP Redress Control Number 4091353. On the same date, Plaintiff submitted a request for congressional assistance through the office of Representative Mike Carey, regarding the CBP encounter and ongoing travel concerns. Since the original DHS TRIP filing, Plaintiff has continued to provide ongoing updates and additional documentation regarding subsequent screening events and their escalating operational impact.

34. On May 9, 2026, Plaintiff arrived at JFK Airport at approximately 7:00 AM. Before she was able to enter the immigration line, a plain-clothes CBP officer approached her and escorted her directly to secondary inspection.

35. During the secondary inspection, CBP officers questioned Plaintiff extensively regarding her employment, phone numbers, email addresses, her husband's information, her children's information, any prior arrests (Plaintiff has none), money transfers, and donations to organizations outside the United States.

36. A CBP officer stated that she could see all Dubai-related emergency flights Plaintiff had booked while attempting to leave the UAE during the regional conflict. The officer also disclosed that there is another individual named "Linda Martinez" with the same date of birth but a different Social Security number, associated with misdemeanor charges from approximately 2020 or 2021. The officer stated that the ongoing enhanced screening could relate to Plaintiff's Dubai travel behavior, the identity overlap, or both.

37. Plaintiff's phone was taken from her and her passcode was requested. She was placed in a separate room while her phone was reviewed. Her bags were also searched and she was subjected to a pat-down in a private room. The total CBP secondary inspection process lasted approximately two hours.

38. Upon reaching the TSA screening checkpoint at approximately 9:09 AM, Plaintiff's boarding pass again triggered SSSS and selectee handling despite the SSSS designation not being visibly printed on the pass. A TSA supervisor advised Plaintiff that additional screening agents were already waiting at her departure gate. Plaintiff's original 9:17 AM flight departed during the ongoing screening process and she was required to rebook a later flight departing at approximately 4:00 PM.

39. Before boarding the rebooked flight, Plaintiff was subjected to additional gate screening while other passengers boarded the aircraft, including shoe removal, a full-body pat-down, removal and inspection of all bag contents, and explosive trace testing.

40. Beginning with domestic travel in late March 2026, Plaintiff has experienced repeated SSSS and selectee screening designations, security holds, delayed boarding pass issuance, enhanced TSA screening, and repeated gate-level screening procedures consistently across both domestic and international flight segments — spanning at least twelve consecutive flights across multiple airports, airlines, and screening environments.

41. The operational impacts of the ongoing enhanced screening have included: inability to reliably check in online; repeated security holds; prolonged TSA screening lasting in excess of one hour on multiple occasions; repeated gate-level screening following completed primary TSA screening; missed flights requiring rebooking; extensive questioning and device

inspections at secondary inspection; public pat-downs at boarding gates; and substantial travel delays affecting both Plaintiff's personal life and professional obligations.

42. Despite ongoing DHS TRIP engagement, congressional outreach, FOIA requests, and Plaintiff’s continued full cooperation with all screening procedures, Plaintiff has received very limited explanation, meaningful recourse, or any indication of an expected timeline for resolution of the underlying cause of the screening designations.

43. The enhanced screening activity has expanded beyond Plaintiff and now affects immediate family members traveling independently on separate reservations. Chris Martinez, Plaintiff’s husband, has been subjected to SSSS/selectee screening and had his Global Entry membership revoked. Yasmin Martinez, Plaintiff’s daughter, also had her Global Entry membership revoked. Both family members have been subjected to secondary inspections and additional CBP questioning across separate travel itineraries.

44. On May 30, 2026, Plaintiff and her husband arrived at Philadelphia International Airport following international travel from Venice, Italy. Upon deplaning, three plain-clothes CBP officers approached both travelers, requested their passports, and escorted them for additional screening. Plaintiff and her husband were separated and independently interviewed. During Plaintiff’s interview, officers questioned her extensively regarding her travel history, Dubai routing, Mexico travel, JPMorgan Chase office locations visited in the United Kingdom, contact information, family members’ names and dates of birth, employment-related travel, and whether she had ever been arrested outside the United States. Officers also repeatedly questioned whether Plaintiff had ever petitioned for or sponsored another individual, or allowed another person to use her name or identifying information. Officers photographed Plaintiff’s travel itineraries, hotel accommodations, identification documents, and bank cards, and reviewed

information from her electronic devices. A CBP supervisor became involved and advised that the matter would be elevated for further review, expressing hope that additional review might help resolve the ongoing issue.

45. At least three separate encounters suggest that government personnel may have identified a record discrepancy, identity confusion, or issue requiring further review: (1) in August 2025, during Yasmin Martinez's secondary inspection at Miami International Airport, CBP officers advised that there appeared to be confusion involving Plaintiff and provided information regarding appeal options; (2) in May 2026 at JFK, a CBP officer disclosed that another individual named "Linda Martinez" shares Plaintiff's date of birth but carries a different Social Security number, with associated misdemeanor charges from approximately 2020 or 2021, and stated that the ongoing screening could relate to that identity overlap, the Dubai travel activity, or both; and (3) in May 2026 at Philadelphia, a CBP supervisor advised that the matter would be elevated for further review and expressed hope that doing so might help resolve or clear the ongoing issue. Despite these acknowledgments, Plaintiff has received no formal confirmation, correction, or resolution.

**Second CBP FOIA Request**

46. On March 13, 2026, Plaintiff retained the National Security Law Firm to represent her in her request for CBP records under FOIA. A copy of Plaintiff's FOIA request is enclosed as Exhibit A.

47. On March 30, 2026, the National Security Law Firm submitted a request for records on Plaintiff's behalf under the FOIA to CBP (CBP-FO-2026-081779) through SecureRelease.gov. Evidence of the submission via SecureRelease is attached as Exhibit B.

48. On May 12, 2026, Defendants issued an acknowledgment that administratively closed the request, citing a deficiency in identity verification. Specifically, the correspondence requested Plaintiff's full name, current address, and date and place of birth. It further stipulated that the request must be submitted in writing, bear Plaintiff's signature, and either be notarized or include a statement made under penalty of perjury pursuant to 28 U.S.C. § 1746. Defendants asserted that because Plaintiff had not provided these required documents and information, the request did not constitute a proper FOIA request; consequently, they were unable to initiate a search for responsive records and administratively closed the file. Exhibit C.

49. Defendants erroneously implemented an administrative closure of the March 30, 2026, FOIA request. Contrary to their assertions, the submission provided a formal identity verification—encompassing the Plaintiff's full name, current residential address, and date and place of birth—alongside a signed declaration executed under penalty of perjury. *See* Exhibit B.

50. On June 12, 2026, Plaintiff formally contested the administrative closure by submitting an appeal (CBP-AP-2026-007533) through the SecureRelease portal. A duplicate of this administrative appeal is incorporated herein as Exhibit D, and proof of its submission via the SecureRelease portal is attached as Exhibit E.

51. Defendants issued the Final Disposition concerning CBP-AP-2026-007533 on June 16, 2026, noting that upon review of the case file, it was determined that the FOIA Division had failed to conduct a sufficient search for records.

52. Consequently, the administrative appeal was granted, and initial request CBP-FO-2026-081779 was remanded to the FOIA Division for processing, as detailed in the Final Disposition attached as Exhibit F.

53. Despite this remand, tracking updates on the SecureRelease Portal indicated that the status remained unresolved.

54. As of June 18, 2026, the portal entry for the request showed "Request Status: Searching for Records", “Identity Verification Status: Not Requested by Agency”, and "Expedited Processing: Pending Decision."

55. As of July 21, 2026, the portal status remained unchanged, continuing to reflect that the search for records was ongoing and the request for expedited processing was still awaiting a decision. Proof of this status is enclosed as Exhibit G.

56. To date, Defendants have failed to produce any records responsive to Plaintiff’s FOIA-PA request, and they have likewise failed to issue a determination regarding Plaintiff’s application for expedited processing.

**Second TSA FOIA Request**

57. On March 13, 2026, Plaintiff retained the National Security Law Firm to represent her in her request for TSA records under FOIA. A copy of Plaintiff's request is enclosed as Exhibit H.

58. On March 30, 2026, the National Security Law Firm submitted a request for records on Plaintiff's behalf under the FOIA to TSA (2026-TSPA-00025). Evidence of the submission via SecureRelease is enclosed as Exhibit I.

59. Defendant issued an Initial Acknowledgement on April 2, 2026. Following this communication, the FOIA request tracking number was updated from 2026-TSPA-00025 to 2026-TSFO-01167. Exhibit J.

60. On May 11, 2026, the National Security Law Firm submitted a TSA Certification of Identity via email at FOIA@tsa.dhs.gov. Exhibit K.

61. Defendants replied to the submission of Plaintiff's TSA Certification of Identity on May 11, 2026, assigning Service Request Number 07940607 and providing directives for uploading the relevant information through SecureRelease. Exhibit L.

62. Plaintiff successfully completed the upload of the TSA Certification of Identity to the Secure Release portal on June 9, 2026. Exhibit M.

63. According to the status updates on the SecureRelease Portal, the matter remains completely unresolved.

64. The portal entry for the request on June 9, 2026, displayed the "Request Status" as "Requester Information Required" and the "Identity Verification Status" as "Not Requested by Agency."

65. As of July 21, 2026, this portal status was entirely unchanged, persisting in reflecting the Request Status as "Requester Information Required" and the Identity Verification Status as "Not Requested by Agency." Exhibit N.

66. As of the date of this filing, Defendants have not produced any records under the FOIA, 2026-TSPA-00025 / 2026-TSFO-01167, in violation of the statutory deadlines imposed by FOIA and the Privacy Act.

67. Defendants have wrongly withheld responsive agency records from Plaintiff.

68. Plaintiff has exhausted the applicable administrative remedies with respect to her FOIA requests pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

69. Defendants' failure to make a determination on the request within twenty (20) days (excluding Saturdays, Sundays, and legal public holidays) violates 5 U.S.C. § 552(a)(6)(A)(i).

70. Plaintiff is entitled to injunctive relief compelling the release and disclosure of requested agency records.

## CAUSES OF ACTION

### COUNT I
### (Violation of FOIA, 5 U.S.C. § 552)

71. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

72. Plaintiff is an individual seeking records that are in the possession, custody, and control of Defendants.

73. Over 30 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of Plaintiff's request, Defendants have not produced these records to Plaintiff for her review.

74. Defendant is required to make a determination on Plaintiff's FOIA request within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request. 5 U.S.C. § 552(a)(6)(A)(i).

75. Defendants have not made a determination within the 20-day deadline and is, thus, unlawfully withholding records pursuant to 5 U.S.C. § 552.

76. Defendants are obligated under 5 U.S.C. § 552(a)(3)(A) to conduct a reasonable search for records responsive to Plaintiff's FOIA Requests. Defendants failed to conduct such a search with respect to the Policies and Communications FOIA requests. Plaintiffs have a legal right to obtain such records, and no legal basis exists for Defendants' failure to search for them. Defendants' failure to conduct a reasonable search for records responsive to Plaintiffs' Requests violates 5 U.S.C. § 552(a)(3)(A).

77. Plaintiff has exhausted all applicable administrative remedies.

78. WHEREFORE, Plaintiff respectfully requests that the Court: (1) declare that Defendants violated the Freedom of Information Act; (2) order Defendants to immediately disclose the requested records, and limit redactions only to personal identifiable information for DHS, CBP, and TSA staff and make copies available to Plaintiff; (3) award Plaintiff reasonable costs and attorney's fees as provided in 5 U.S.C. § 552(a)(4)(E); and (4) grant such other relief as the Court deems just and proper.

**COUNT II**
**Violation of the Privacy Act – 5 U.S.C. § 552a(d)(1)**

79. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

80. Plaintiff is an individual seeking records about herself.

81. Plaintiff submitted a FOIA and Privacy Act request to CBP and TSA on March 30, 2026.

82. Defendants are required to permit an individual to review his records, upon request pursuant to 5 U.S.C. § 552a(d)(1).

83. Defendants have not produced these records to Plaintiff for her review. Thus, Defendants are improperly withholding these records in violation of 5 U.S.C. § 552a(d)(1).

84. Because the Defendants have refused to comply with 5 U.S.C. § 552a(d)(1), Plaintiff has exhausted all statutorily available administrative remedies. Thus, Plaintiff is entitled to bring suit pursuant to 5 U.S.C. § 552a(g)(1)(B).

85. Plaintiff has a legal right under the Privacy Act to obtain the information she seeks, and there is no legal basis for Defendants' denial of said right. Defendants' refusal to provide Plaintiff with the requested records amounts to a deprivation of Plaintiff's federal rights.

86. WHEREFORE, Plaintiff requests that this Court award her the following relief: (1) declare that Defendants violated the Privacy Act; (2) enjoin the Defendants from withholding records pursuant to 5 U.S.C. § 552a(g)(3)(A); (3) order Defendants to immediately produce the records that have been improperly withheld from her pursuant to 5 U.S.C. § 552a(g)(3)(A); (4) award Plaintiff reasonable costs and attorney's fees as provided in 5 U.S.C. § 552a(g)(3)(B); and (4) grant such other relief as the Court may deem just and proper.

**PRAYER FOR RELIEF AS TO COUNTS I - II**

Plaintiff respectfully requests that the Court:

87. Declare that each Defendants failed to comply with FOIA and the Privacy Act.

88. Order each Defendant to conduct an independent and comprehensive search of its documents and records in response to Plaintiff's FOIA and Privacy Act requests;

89. Order Defendants to produce all responsive records without further delay or charge;

90. Enjoin each Defendant from continuing to withhold;

91. Award Plaintiff the costs of this action and reasonable attorney fees against each Defendant pursuant to 5 U.S.C. § 552(a)(4)(E) and 5 U.S.C. § 552a(g)(3)(B); and

92. Grant such other and further relief as this Court deems just and proper.

Dated: September 11, 2026

Respectfully submitted,

Brett O'Brien

BRETT O'BRIEN, ESQ
DC Bar License #: 1753983
NATIONAL SECURITY LAW
FIRM, LLC
1250 Connecticut Avenue NW
Washington, DC 20036

Phone: (202) 600-4996
Fax: (202) 545-6318
*Attorney for Plaintiff*